UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEIRDRE PETTIGREW,

                         Plaintiff,          CASE NO. 08-11683
                                             HONORABLE DENISE PAGE HOOD
v.


PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

                         Defendant.
_____/

## MEMORANDUM OPINION AND ORDER

### I.    BACKGROUND/FACTS

On April 21, 2008, Plaintiff, Deirdre Pettigrew, filed the instant action against Prudential

Insurance Company of America (Prudential) based on the Employee Retirement Income Security

Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* This matter is before the Court on the parties' cross-

motions for entry of judgment. Responses and Replies have been filed. A hearing on this matter

was held on April 20, 2009.[1]

Plaintiff was employed by Pioneer Automotive Technologies, Inc. (Pioneer) beginning

December 8, 2003. Prudential issued Group Insurance contract DG-91855-OH (the Plan) to Pioneer

---

[1] Also before the Court is Prudential's Second Motion for Protective Order, filed on
December 11, 2008. At the hearing on this matter, Prudential's counsel indicated that this
motion is now moot.

to provide disability benefits to qualified employees.[2]  Plaintiff's most recent position was as a Senior Engineer. Plaintiff suffers from Chronic Fatigue Syndrome (CFS) resulting from viral infection with Cytomegalovirus and Epstein-Barr Virus, as well as Fibromyalgia and Cervical Radiculopathy. As a result of Plaintiff's conditions, she asserts that she has been unable to perform the material and substantial duties, not only of her regular occupation, but also any other occupation. Plaintiff last worked on May 15, 2006.

In accordance with the procedures established by the Plan, Plaintiff submitted a claim for short-term disability (STD) benefits on May 25, 2006.[3]  *See* Admin. Rec. at 770.  She indicated the

---

[2]  The Plan states in relevant part:

The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits.  The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

*See* Admin. Rec. at 53.

[3]  The Plan states that:

You are disabled when Prudential determines that:

• you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

• you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

\*                              \*                              \*

We may require you to be examined by doctors, other medical practitioners or

following conditions which prevent her from performing the material and substantial duties of her

occupation: fatigue, severe pain, causing lack of concentration, difficulty sitting and standing. *Id.*

Initially, Prudential informed Plaintiff that it was accepting liability for STD benefits for the period

commencing May 29, 2006. The 'Soap' or claims management (CM) note indicated that the

employee's medical record does support impairment and employee does meet the definition of

disability. *See* Admin. Rec. at 74. Plaintiff's benefits were approved through June 18, 2006. *Id.*

On August 22, 2006, STD benefits were extended through September 24, 2006 and later to October

8, 2006. On October 18, 2006 and November 8, 2006, Prudential informed Plaintiff that it needed

further information to make a determination on her claims for STD and long-term disability (LTD)

benefits.[4] *See* Admin. Rec. at 238, 242. Prudential informed Plaintiff on December 29, 2006 that

it was paying benefits only through October 8, 2006, and terminating disability as of October 9,

2006, because it had determined that Plaintiff was capable of performing sedentary work on a full-

time basis. *See* Admin. Rec. at 223-231. Prudential also denied Plaintiff LTD benefits for the

reason that Plaintiff's disability did not continue for the entire one hundred and eighty (180) day

elimination period.[5]

---

vocational experts of our choice. Prudential will pay for these examinations. We
require examinations as often as it is reasonable to do so. We may also require
you to be interviewed by an authorized Prudential Representative. Refusal to be
examined or interviewed may result in denial or termination of your claim.

*See* Admin. Rec. at 30.

[4] The telephone logs provide some evidence of employer interference with the handling
of Plaintiff's claims, Plaintiff's employer indicates to a Prudential representative that Pioneer
believes "that Ms. Pettigrew's claim is fraudulent . . . ." *See* Admin. Rec. 79, 121.

[5] Under the terms of the Plan, Plaintiff was required to continue to meet the definition of
disability from May 15, 2006 (the last day she worked) through November 11, 2006, for a total
of 180 days. "Since the information supports that [Plaintiff] could have continued to work at

Dr. Dianna L. Neal, M.D., performed the internal medical review for Prudential, and concluded that Plaintiff could perform a sedentary level of functioning on the basis of her reported activity levels. Dr. Neal also concluded that an infectious disease peer review be performed to gain a better understanding of the conditions identified by Plaintiff's treating doctor, Dr. James Neuenschwander. Instead of conducting Dr. Neal's recommended peer review, Prudential terminated Plaintiff's benefits and denied her claim two days later, by letter prepared by Lorena Eaton, a Disability Claims Specialist for Prudential. [6]

Plaintiff, through counsel, appealed this decision, attaching additional medical evidence of her disability, including sworn statements from her treating physicians, Dr. Jason Postula-Stein and Dr. Neuenschawander and additional medical records and diagnostic test results. By notice dated August 24, 2007, Prudential scheduled an Independent Medical Exam (IME) with a Rheumatologist, Dr. Dale Baker. On August 28, 2007, Plaintiff's counsel advised Prudential that Plaintiff would not attend the IME.[7] *See* Admin. Rec. at 170. On September 6, 2007, Prudential affirmed the decision

_____

[her] sedentary occupation throughout the Elimination Period, [Plaintiff is] not eligible for benefits under the terms of the Group Policy." *See* Admin. Rec. at 228.

[6] Plaintiff also takes issue with the fact that Prudential did not verify alleged activity levels via video surveillance. Instead, it retained Research Consultants Group, Inc., to perform an Internet search and to question neighbors as to activities. The report did not identify the name of the agent, nor did it identify the neighbors as to who allegedly said what and in what context. The Court notes that these reports and allegations are unsworn, unidentified, and unverifiable.

[7] It is Plaintiff's counsel's position that Prudential was without legal authority to schedule an IME after the initial denial. According to counsel, the Policy is in conflict with ERISA regulations. In support, counsel relies on the unpublished decision of *Neiheisel v. AK Steel Corp.*, No. 03-cv-868, 2005 U.S. Dist. LEXIS 4639 (S.D. Ohio, Feb. 17, 2005), which, in interpreting 29 C.F.R. § 2560.503-1(h)(3)(iv), found that it was inappropriate for the insurer to permit an independent medical exam of the plan-participant and to submit his report, which was made part of the record on appeal. The *Neiheisel* court concluded that the regulations promulgated by the U.S. Department of Labor did not contemplate that 'consultation with an independent health care professional' meant "to receive a report based on the independent

denying STD benefits as of October 9, 2006, and LTD benefits, based on Plaintiff's "refusal to

attend the IME." *See* Admin. Rec. at 167.   Plaintiff requests this Court to place her in the same

position she would have been had Prudential not wrongfully terminated and denied her disability

benefits, to order Prudential to pay the STD and LTD benefits for which she is entitled, plus interest,

plus 12% penalty interest under Michigan's Insurance Code, as well as reasonable attorney fees and

costs.

### Plaintiff's Medical History

Plaintiff's medical records document the onset of neck pain and bilateral hand numbness in

May 2005.   Her initial examination was performed by Eric Kovan, D.O., a physiatrist, on June 13,

2005,[8] who examined her at Botsford Hospital regarding severe neck and back pain, left side muscle

spasm, and numbness and tingling in her left hand, with a subsequent diagnosis of cervical

radiculopathy supported by imaging and neurodiagnostic studies.   She was having difficulties after

sitting and lifting.   *See* Admin. Rec. at 389-90.   She had a history of migraine headaches.   Her

medications were Elavil, Klonopin, Flexeril, Oxycodone.   *Id.*   Dr. Kovan noted that after review of

her MRI, he observed C6-C7 abnormalities.   *Id.*   Dr. Kovan's diagnosis was '[l]eft neck and

radicular pain consistent with underlying C7 radiculopathy with also noted cervical myositis with

---

examination of the claimant."   *Id.* at *25-26.   The court stated:

> Such an examination results in the insertion of new information into the record at
> the appeal stage after the claimant has had his final opportunity to address any
> perceived deficiencies in his claim as initially submitted.

*Id.* at *26.   It is Plaintiff's counsel's contention that his letter to Prudential was an attempt to
engage in discussion with the company in regard to the need for an IME.

[8]  Plaintiff was under Dr. Kovan's care from June 13, 2005 through April 25, 2008.   *See*
Admin. Rec. at 380.

trigger points." *Id.* at 391.  Dr. Kovan injected her with Depo-Medrol and lidocaine at the trigger

points and set her up for cervical epidural series.  *Id.*

Plaintiff had another examination by Dr. Kovan on July 25, 2005.  *See* Admin. Rec. at 388.

His examination showed left C7 radiculopathy and interspinous ligament strain with resolved

cervical myositis.  *Id.*  On August 11, 2005, the C7 radiculopathy was resolved but still an

interspinous ligament strain was identified.  *See* Admin. Rec. at 387.  On August 23, 2005, she still

complained of neck pain and was ordered to start increasing her activities and strengthening.  *See*

Admin. Rec. at 386.

On September 20, 2005, she had "noted pain over the interspinous musculature between C6-

C7 spinous process . . . ."  *See* Admin. Rec. at 385.  Plaintiff was doing well until her stress level

at work increased, she was doing a lot of lifting and began experiencing increasing neck pain.  *Id.*

Dr. Kovan performed an epidural injection and she was to continue her medications and her

workout.  *Id.*  On October 17, 2005, her diagnosis was positive disc via MRI.  *See* Admin. Rec. at

383.  She was experiencing severe neck pain and had epidural injections.  *Id.*  Dr. Kovan noted that

while she has had injections, she is still experiencing pain.  Plaintiff informed him  that she was

unable to run or ride a bike with her head up.  *Id.*  Dr. Kovan further indicated that he would like

her to see another doctor to see if surgery intervention is necessary due to her lack of responsiveness

to conservative treatment.  *Id.*  Dr. Kovan noted concern for her emotional condition on April 26,

2006, and increased her Effexor dosage and referred her to Dr. Jeffrey Kertes, a psychologist.  *See*

Admin. Rec. at 380.[9]  Dr. Kovan's impressions at this time were that she had multiple areas of

mysofascial pain with a component of fibromyalgia, and a history of neck pain with a small disc

---

[9]  There is no indication in the record that this referral was pursued.

bulge at C7.  *Id.*

 Plaintiff was seen by David M. Montgomery, M.D., Surgeon, on December 7, 2005.  *See* Admin. Rec. at 363.  Dr. Montgomery requested x-rays showing minimal degenerative joint disease of the cervical spine and an MRI showing mild degenerative changes and minimal disc bulging at C6-C7.  *Id.*  Dr. Montgomery offered Plaintiff the option of surgery including discectomy and fusion.  He indicated there was no guarantee of success as most of her pain was axial.  Plaintiff declined surgery and decided to continue with conservative treatment.

 On April 18, 2006, Plaintiff was diagnosed with Fibromyalgia Syndrome by Dr. Jason Postula-Stein, a Board Certified family practitioner and Plaintiff's primary care physician.  *See* Admin. Rec. at 677.  Dr. Postula-Stein noted generalized complaints of pain, difficulty sleeping, pain in her arms and legs, feeling tired, with examination findings including right sacroiliac (SI) joint tenderness and, "18/18 Fibromyalgia tender points." *Id.*  Her laboratory results from April 21, 2006 indicate that she had a sedimentation rate of 3, ENA was not detected, and her ANA test was positive 1:320 (speckled). [10]

 Plaintiff was examined by Marc Strickler, M.D. on May 8, 2006 for pain and fatigue.  *See* Admin. Rec. at 498-500.  Dr. Strickler noted that while she enjoys "lifting exercises, sailing and roller blading[, s]he has not been able to participate in any of these." *Id.*  Dr. Strickler noted that Plaintiff reported she was exhausted after three hours of working, and that she has difficulty going to the grocery store and with other household chores.  *Id.*  Dr. Strickler agreed with the probable

---

[10]  Dr. Postula-Stein's Sworn Statement, taken on April 24, 2007, was included in Plaintiff's appeal of Prudential's initial decision terminating her STD benefits and denying altogether LTD benefits.  *See* Admin. Rec. 250-290.  It is unclear whether any of this material was reviewed by Prudential as it affirmed its initial decision based on Plaintiff's refusal to submit to an IME.

diagnosis of Fibromyalgia with no changes in treatment recommended. *Id.* Dr. Strickler noted that

he would like to see the records from Dr. Postula-Stein's office to see what has been done so far and

noted that Plaintiff may need screening for endocrinological or rheumatological disorders that would

be causing her the pain and fatigue which she described.[11] *Id.*

On June 10, 2006, Plaintiff was seen by James E. Dowd, a rheumatologist. *See* Admin. Rec.

551-55. She reported generalized progressive pain in the preceding three years, also indicated

fatigue, headaches, neck pain and stiffness, joint stiffness, myalgia, anxiety and insomnia. *Id.* Dr.

Dowd indicated that there was no evidence of immune-mediated disease and suggested that she may

suffer from Vitamin D deficiency. *Id.*

Plaintiff began treatment with James Neuenschwander, M.D., on June 28, 2006 for chronic

fatigue. The record indicates that Dr. Neuenschwander's treatment continued through May 2,

2007.[12] Dr. Neuenschwander's records document prescriptions for DHEA to support adrenal

function and a number of nutrients to support her immune system as well as treatment for Viremia

(EBV, HSV, and CMV).[13] In a letter dated November 1, 2006, Dr. Neuenschwander wrote

---

[11] There is no indication in the record that Plaintiff continued care with Dr. Strickler. It should be noted that Plaintiff did participate in a physical therapy program in May of 2006 for treatment of chronic generalized pain in her trunk and extremities, as well as for fatigue, with improvement noted, and a continued home program was recommended. *See* Admin. Rec. at 527-42.

[12] Dr. Neuenschwander's Sworn Statement taken on May 22, 2007, was included in Plaintiff's appeal of Prudential's initial decision terminating her STD benefits and denying altogether LTD benefits. *See* Admin. Rec. 291-337. It is unclear whether any of this material was reviewed by Prudential as it affirmed its initial decision based on Plaintiff's refusal to submit to an IME.

[13] Prudential argues that the basis for Plaintiff's adrenal insufficiency is unclear considering her normal serum cortisol levels reports on June 29, 2006 and October 10, 2006. *See* Admin. Rec. at 226.

concerning Plaintiff's CFS, immunodeficiency, and viremia. *See* Admin. Rec. 428. He indicated

that Plaintiff was improving slowly, but that any significant stressor, including returning to work too

early, would set back any improvement she has seen. *Id.* He stressed the importance of her current

treatment plan: rest, anti-virals, and supplements. *Id.* He added that if Plaintiff were to return to

work too early, this would "condemn Deirdre to a lifetime of fatigue and disability." *Id.* On

December 15, 2006, Prudential wrote to Dr. Neuenschwander asking for clarification regarding the

conditions for which he was treating Plaintiff, as well as the activity restrictions that he had

indicated were necessary. *See* Admin. Rec. at 230.[14] Dr. Neuenschwander responded on December

19, 2006:

> This diagnosis is based on a number of measurements of her cortisol and DHEA-S
> levels. Her most recent measurements showed an A.M. cortisol of 5.2 (lab normal

---

[14]  The following specific questions were posed:

(1) The data provided for my review includes serum Cortisol levels 6/29/06 and 10/10/06, both of which are within normal limits. Can you help me to understand Ms. Pettigrew's diagnoses of Adrenal Insufficiency?

(2) Can you help me to understand the etiology of Ms. Pettigrew's immunocompromised condition and impact on daily functions? In your 11/1/06 statement, you indicate she is restricted from occupational activities. Are there other preventative disease measures recommended (for example: mask wear, avoiding crowds, contact with actively ill person?)

(3) Are the restrictions you have identified based upon self reported symptoms or a specific pathologic process?

(4) The information found within the medical notes as well as provided by Ms. Pettigrew in several statements, documents a continued fairly active lifestyle (lives independently, drives, cares for two dogs which she walks three times daily, shops, cooks, and maintains a home exercise program.) The described activity level, in my opinion would indicate at least a Sedentary functional level. Can you provide your opinion with regard to Ms. Pettigrew's activity level?

*Id.*

of 8.7 -22.4) with a DHEA-S of 56 (lab normal of 23-266). The cortisol is below even the labs somewhat ridiculous level of 8.7 and the DHEA is in the lowest 10% of the normal range. These normal ranges do not reflect healthy ranges. . . . [T]he DHEA level should be over 150 for a woman that is Deirdre's age. Deirdre's immune situation appears to be the result of an ongoing infection with human herpes virus 6. Her HHV6 titers remain extremely high. Her immune system dysfunction is reflected in an excess number of T-cells with a T4/T8 ratio that was too low (.95) . . . .The specific pathologic process you refer to his this chronic infection. . . . Finally, walking your dog for half a mile three times a day is hardly the equivalent of working 40 hours per week. If she can return to work with the limitations that she can leave when she is exhausted, come in late when she is unable to sleep, call in when her pain has become incapacitating, and have someone double check her work for mental mistakes, then she may be able to return to work.

*See* Admin. Rec. 341. Dr. Neuenschwander's records also reveal that he had two sets of laboratory testing done, on June 30, 2006 (Admin. Rec. at 580) and October 10, 2006 (Admin. Rec. at 347). These laboratory tests included a primary immunodeficiency panel, for lymphocyte tests including CD3, CD4, CD8, and CD16 cells. Both of these panels were abnormal.

Plaintiff was also seen by Charles Craig, M.D., an infectious disease specialist, on November 22, 2006, for evaluation of her elevated IgM antibody titers and for several viruses in the herpes family. *See* Admin. Rec. at 376-77. Dr. Craig indicated that he thought Plaintiff has fibromyalgia but was not a real authority on the condition, and suggested she see a rheumatologist. *Id.* Dr. Craig also indicated that "she might be able to work part-time, but would need to do some tolerance finding with an employer." *Id.*

## II.      APPLICABLE LAW & ANALYSIS

### A.      Standard of Review

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard

unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989). If a plan gives the administrator such discretion the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). Such decisions are not arbitrary and capricious if the decision to terminate benefits was the product of deliberate principled decision-making and based on substantial evidence. *Killian v. Healthsource Provident Administrators, Inc.*, 152 F. 3d 514, 520 (6th Cir. 2005).

Additionally, in June of 2008, the United States Supreme Court endorsed the Sixth Circuit's "combination of factors" approach to resolving benefits disputes and deciding whether a decision to deny or to terminate benefits was arbitrary and capricious. *See MetLife v. Glenn*, 128 S. Ct. 2343 (2008). The *MetLife* court also held that where the plan administrator both determines the eligibility for benefits, as well as pays the benefits out of its own pocket, such a conflict should be considered "as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Id.* at 2346.

Plaintiff argues that Prudential provides no basis for its decision that Plaintiff's impairments were supported in the record and disabling, through October 8, 2006, but not thereafter and why benefits were terminated as of October 9, 2006, retroactively, by notice dated December 29, 2006. Plaintiff argues, Prudential's decision was arbitrary and capricious, especially in light of the inherent conflict of interest involved; Prudential is the decision-maker and the payor of plan benefits.

The parties agree that the arbitrary and capricious standard of review applies in this matter

-11-

as the Plan grants Prudential the discretion to determine a claimant's eligibility to receive benefits. *See* f.n. 1, supra.   After a review of the record, the Court concludes that Prudential failed to provide Plaintiff with a full and fair review of her claim for benefits.   Its denial of her claim for STD benefits as of October 8, 2006, and total denial of LTD benefits was arbitrary and capricious for the reasons discussed below.[15]

First, Prudential only conducted a file review.  While the Plan administrator's "reliance on a file review does not, standing alone, require the conclusion that [the administrator] acted improperly, . . . the failure to conduct a physical examination - especially where the right to do so is specifically reserved in the plan- may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert v. Firstar Finance Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005).   In addition to the lack of physical examination, the *Calvert* court relied on the fact that the administrator relied exclusively on the conclusion of the doctor conducting the file review, a review which demonstrated the doctor's failure to review the claimant's entire file, as well as his rejection of the claimant's doctors' conclusions without explanation.  *Id.* at 296-97.   The *Calvert* court reversed the administrator's rejection of LTD benefits.  *Id*. at 297.

Similarly, the Court finds Prudential's reliance on Dr. Neal's file review troubling considering the fact that Dr. Neal recommended a peer review, and such peer review was not conducted before termination of Plaintiff's benefits.   In response to Dr. Neuenschwander's December 29, 2006 letter, Dr. Neal, in describing his findings, states in a December 27, 2006 CM

----

[15]   The Court will not address whether Plaintiff's counsel's interpretation of the *Neiheisel, supra,* case permitted Plaintiff to refuse to appear for an IME and whether Sixth Circuit law precluded Prudential from requesting such an IME during the appeal of Plaintiff's claim for benefits. Further, the Court will not address whether the denial of Plaintiff's appeal was appropriate based on her refusal to be examined by Dr. Baker as the Court concludes that the initial denial of Plaintiff's claim was arbitrary and capricious.

note:

> Identified limitations include fatigue, sleep difficulties, pain, and mental functions (not detailed) with no additional restrictions identified.  He opines, Ms. Pettigrew's activity level is not equivalent to working a 40 hour week.

> The additional data provided does not provide a clear understanding [of] the chronic infectious disease process or immune status.  An Infectious Disease Peer Review is recommended in efort (sic)  to gain a better understanding of the conditions identified by Dr. Neurenschwander.

> There is no additional data provided which changes the opinion of the prior Clinical Reviews, with data supporting Sedentary level of functioning on the basis of Claimant's reported activity level (lives independently, shops, cooks, exercises, and walks dogs 3 times daily).

Admin. Rec. at 102.   It is clear from Dr. Neal's December 27, 2006 CM note that the conclusions reached by Dr. Neuenschwander were still unclear to her.  Instead of following up with her advice, Prudential denied benefits, without a clear understanding of Plaintiff's diagnoses.  Additionally, like the case of *Calvert*, Prudential did not send Plaintiff for an independent examination before its initial denial.  A decision that is certainly questionable considering Dr. Neal's apparent confusion about Plaintiff's diagnoses and Prudential's decision to send Plaintiff to an IME after it had already denied her claim.

Additionally, Prudential failed to explain its determination that Plaintiff could work full-time in a sedentary position, especially in light of Dr. Neuenschwander's December 29, 2006 letter, and Plaintiff's reported activity levels.  Like the plan administrator in *Mishler v. Metropolitan Life Ins. Co.,* No. 06-10149, 2007 U.S. Dist. LEXIS 10403 (E.D. Mich. 2007), Prudential's reviewer does "not point to any record evidence to support [the] conclusion that Plaintiff can, in fact, work" a sedentary full-time position.  *Id.* at * 24-25.  Prudential's failure to explain how it reached the conclusion that Plaintiff can work a full-time sedentary position is likewise problematic in light of

-13-

the fact that Prudential conducted a selective review of Plaintiff's file in reaching this conclusion.

Ms. Eaton's December 29, 2006 rejection of benefits letter, in summarizing Plaintiff's medical records, notes that Dr. Craig "opined that you were capable of working part-time." Admin. Rec. at 227.  While not explaining how working part-time supports a finding of the ability to perform "sedentary work on a full-time basis[,]" Ms. Eaton also failed to cite the complete statement of Dr. Craig that "she might be able to work part-time, but would need to do some tolerance finding with an employer."  *See* Admin. Rec. at 228, 376-77.  It is a leap to suggest that Plaintiff's possible ability to work part-time renders her capable of performing full time sedentary work.  *See Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F. 3d 501, 507 (6th Cir. 2005); *see also*, *Dorris v. Cummins Engine Co., Inc.*, 470 F. Supp. 2d 797, 816-17  (M.D. Tenn. 2006) (Applying a *de novo* standard of review, administrator's denial of benefits reversed in part because of selective attention to doctor's "check beside the box for sedentary work" while ignoring, in the same form, that the doctor indicated the plaintiff could not perform all of the requirements of her former position." *Id.* at 812.)

In *Kalish*, the Sixth Circuit held  that the district court erred in concluding that the claimant could perform sedentary work when the plan language defined disability as "unable to perform *all* of the material and substantial duties of *his* occupation."  *Id.* at 506 (Emphasis in original).  The Sixth Circuit found reliance on the mere possibility that a claimant may be able to return to work insufficient to uphold the administrator's decision, in light of the fact that the claimant's former occupation required walking, standing, and reaching for several hours a day. *Id.* at 507.  Prudential defines disability as the inability "to perform the material and substantial duties of your regular occupation due to your sickness or injury . . . ." Admin. Rec. at 30.   Material and substantial duties

are defined as those duties which "are normally required for the performance of your regular occupation."  *Id.*  In light of Plaintiff's occupation as a Senior Engineer, her possible ability to perform sedentary work is insufficient to uphold Prudential's decision.

Further, Prudential did not take into account Plaintiff's actual duties as a Senior Engineer in concluding that she could perform full-time sedentary work.  Rather, Prudential relied on the OASYS reported duties of a test engineer.  Admin Rec. at 227.  A review of Plaintiff's position as a Senior Engineer indicates that she was required to act in a supervisory capacity, and was required to possess high level language, mathematics and reasoning skills.  Admin. Rec. at 547.  She was also required to evaluate new component parts by performing engineering tests on current and prototype products, and provide technical assistance for other departments.  *Id.* Ms. Eaton fails to explain how Plaintiff can perform all of the material and substantial duties of her occupation considering Plaintiff's pain, fatigue, radiculopathy, and the cognitive side-effects of the medications on her ability to perform these duties.  *See Smith v. Continental Casualty Co.*, 450 F. 3d 253, 264 (6th Cir. 2006) (reviewing physician merely listed the plaintiff's medications in the denial letter but did not discuss how side effects from the medication might affect the plaintiff's ability to perform her job.) Ms. Eaton also selectively relies on Plaintiff's October 11, 2006 reported activity levels in support of her conclusion that she can perform full-time sedentary work, but neglects Dr. Neuenschwander's conclusion that Plaintiff's activities do not render her able to work on a full-time basis, and Plaintiff's December 2006 reported activity levels, which were less than her October activity levels.

Prudential relied on the alleged absence of objective findings to support its denial of benefits. However, there were objective findings. Dr. Postula-Stein applied "the accepted American College of Rheumatology 18 trigger/tender point criteria in diagnosing her fibromyalgia[,]" as well as the

-15-

immune system testing that Dr. Neuenschwander describes in his December 26, 2009 letter. *Dorris v. Cummins Engine Co., Inc.*, 470 F. Supp. 2d 797, 816-17 (M.D. Tenn. 2006). In any event, even if Plaintiff had only provided evidence of her subjective complaints, denial of her claim on the lack of objective findings would require her "to meet an additional requirement for eligibility beyond those imposed by the [Plan]." *Id.* (collecting cases).

Prudential relies on *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376 (6th Cir. 1996), in support of its argument that it was not arbitrary and capricious to deny Plaintiff's claim due to a lack of objective evidence in the record. *Yeager* is distinguishable from the present matter. In *Yeager*, the court concluded that "[i]n the absence of any definite anatomic explanation of plaintiff's symptoms, we cannot find that the administrator's decision to deny benefits was arbitrary and capricious." *Id.* at 382. However, in *Yeager*, the Sixth Circuit noted that "no doctor ever actually definitively diagnosed plaintiff as having [fibromyalgia]." *Id.* at 381-82. This is unlike this matter, where Plaintiff's records show that various doctors have diagnosed her with the conditions for which she seeks disability benefits. Drs. Postula-Stein and Kovan both diagnosed Plaintiff as suffering from fibromyalgia, and Drs. Craig and Stricker both indicated that she possibly suffered from fibromyalgia. Dr. Neuenschwander diagnosed her as suffering from CFS and explained the pathologic process underlying Plaintiff's condition as the chronic viral infections from which she suffers. Another factor distinguishing *Yeager* from the instant matter is the fact that the plan administrator in *Yeager* sent the plaintiff for an independent evaluation and "forwarded the evaluation reports to the plaintiff's physicians for their comments." *Id.* at 378.

Based on the foregoing, the Court finds that Prudential's decision terminating Plaintiff's STD benefits and denying altogether LTD benefits was not the product of deliberate principled decision-

making, and was not based on substantial evidence in the record.  *See Killian*, 152 F. 3d at 520.  The reliance on only a file review, where the doctor selectively reviewed Plaintiff's medical records, and rejected Plaintiff's treating doctors conclusions without explanation or, at the very least, an understanding of how her doctors reached such conclusions, as well as its failure to send Plaintiff for an IME (before its initial denial) in the absence of such an understanding and failure to substantiate with record evidence its conclusion that Plaintiff was capable of performing full-time sedentary work, a conclusion reached without regard to her regular occupational duties as a Senior Engineer, are factors which require this Court to reject the administrator's decision.  These factors, coupled with Prudential's inherent conflict of interest resulted in an arbitrary and capricious denial of Plaintiff's benefits claim.  Plaintiff requests that the Court order her benefits reinstated, as well as award penalty interest and attorney fees and costs.  The Court finds that such an order would be premature at this stage of the proceedings.  Instead, the Court will remand this matter to the administrator to conduct a full and fair review of Plaintiff's claim for disability benefits.


III.    **CONCLUSION**

Accordingly,

IT IS ORDERED that Prudential's Motion to Affirm the Administrator's Decision [**Dkt. No. 16, filed December 15, 2008**] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Entry of Judgment [**Dkt. No. 14, filed on December 15, 2008**] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Prudential's Second Motion for Protective Order [**Docket No. 12, filed on December 11, 2008**] is MOOT.

IT IS FURTHER ORDERED that this CAUSE OF ACTION be remanded back to the Administrator for review in accordance with this Opinion.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager